PLAINTIFF'S
EXHIBIT

No. 2

tabbies

## DEED OF TRUST

Loan Number:  5003899

THIS DEED OF TRUST ("Security Instrument") is made on ___October 6, 1998___ . The grantor
is ___EDDIE LEWIS, JR., A SINGLE MAN___ ("Borrower").
The trustee is ___GREGORY J. LAWSON___ ("Trustee"). The beneficiary is
___ENCORE MORTGAGE, INC.___ ,a body corporate duly organized and existing under the laws of
the State of Maryland, and whose address is ___HILTON PLAZA 1726 REISTERSTOWN ROAD SUITE 217 PIKESVILLE, MD. 2120___ ("Lender").
Borrower owes Lender the principal sum of ___THIRTY-NINE THOUSAND___
Dollars (U.S. $___39,000.00___ ). This debt is evidenced by Borrower's note dated the same date as this Security
Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on
___November 1, 2013___ . This Security Instrument secures to Lender: (a) the repayment of the debt
evidenced by the Note, with interest, and all renewals, extensions and modifications; (b) the payment of all other sums, with
interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's
covenants and agreements. For this purpose, Borrower irrevocably grants and conveys to Trustee, with power of sale, the following
described property located at ___BALTIMORE CITY___ County, Maryland:

In land referred to in this commitment is more fully described as:
SEE EXHIBIT "A" HERETO ATTACHED AND BY THIS REFERENCE MADE A PART HEREOF



141831 005003899   8050038994   40636051 Mortgage

which has the address of ___129 S. KOSSUTH ST, BALTIMORE, MD 21229___
[Street/City/State/Zip Code]                                 ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances,
and all fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security
Instrument. All of the foregoing is referred to in this Security Instrument as the "Property".

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and
convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend
generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited
variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.     Payment of Principal and Interest; Prepayment and Late Charges. Borrower shall promptly pay when due the
principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2.     Funds for Taxes and Insurance. Subject to applicable law or to a written waiver by Lender, Borrower shall pay to
Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and
assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or
ground rents on the Property, if any; (c) yearly hazard of property insurance premiums; (d) yearly flood insurance premiums, if any;
(e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions
of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any
time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may
require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to
time, 12 U.S.C. 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any
time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the
basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including
Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items.
Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the
Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge.
However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender
in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires
interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may
agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual
accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The
Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for
the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is
not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to
Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly
payments, at Lender's sole discretion.

Form #593 MD (10/96) First Mortgages Only

BEGINNING for the 1st and being on the southeast side of Kossuth Street two hundred sixteen feet southwesterly from the southwest side of Joseph Street, having an aggregate frontage soouthwesterly on the southeast side of Kossuth Street of forty-eight feet with an even rectangular depth southeasterly of one hundred feet to the northwest side of an alley fifteen feet wide.

ADDRESS: 129 S. Kossuth Street, Baltimore, MD

- 2 -

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments. In the event Borrower fails to pay any due and payable Property Taxes, Lender may, in its sole discretion, pay such charges and add the amounts thereof to the principal amount of the loan secured by the Security Instrument on which interest shall accrue at the contract rate set forth in the Note.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower. (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. **Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage", and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. In the event Borrower fails to maintain hazard insurance (including any required flood insurance) in an amount sufficient to satisfy all indebtedness, fees, and charges owed Lender (in addition to payment of all liens and charges which may have priority over Lender's interest in the property,) Lender may, in its sole discretion, obtain such insurance naming Lender as the sole beneficiary (single interest coverage). Lender may add any premiums paid for such insurance to the principal amount of the loan secured by this Deed of Trust on which interest shall accrue at the contract rate set forth in the Note.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's rights to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

7. **Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property (including without limitation). In addition, Grantor (Mortgagor) covenants at all times to do all things necessary to defend the title to all of the said property, but the Beneficiary (Mortgagee) shall have the right at any time to intervene in any suit affecting such title and to employ independent counsel in connection with any suit to which it may be a party by intervention or otherwise, and upon demand Grantor (Mortgagor) agrees either (1) to pay the Beneficiary all reasonable expenses paid or incurred by it in respect to any such suit affecting title to any such property, or affecting the Beneficiary's (Mortgagee's) liens or rights hereunder, including, reasonable fees to the Beneficiary's (Mortgagee's) attorneys or (2) to permit the addition of such expenses, costs, and attorney's fees to the principal balance of the Note(s) secured by this Deed of Trust (Mortgage) on which interest shall accrue at the Note rate.

Form #593 MD (10/96)

- 3 -

Lender's actions may include payment and sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8.   Mortgage Insurance. If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect until such time as the requirement for the insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

9.   Inspection. Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10.   Condemnation.  The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraph 1 and 2 or change the amount of such payments.

11.   Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12.   Successors and Assigns Bound; Joint and Several Liability; Co-signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13.   Loan Charges. If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

14.   Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

15.   Governing Law; Severability. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

16.   Borrower's Copy. Borrower shall be given one conformed copy of the Note and of this Security Instrument.

17.   Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or an interest therein is sold or transferred by Borrower (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person or persons but is a corporation, partnership, trust or other legal entity) without Lender's prior written consent, excluding (a) the creation of a lien or encumbrance subordinate to this Security Instrument which does not relate to a transfer of rights of occupancy in the property, (b) the creation of a purchase money security interest for household appliances, (c) a transfer by devise, descent or by operation of law upon the death of a joint tenant or (d) the grant of any leasehold interest of three years or less not containing an option to purchase, Lender may, at Lender's option, declare all the sums secured by this Security Instrument to be immediately due and payable.

Form #593 MD (10/96)                                                                                              Page 3 of 5

- 4 -

If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration in accordance with paragraph 14 hereof. Such notice shall provide a period of not less than 30 days from the date the notice is mailed within which Borrower may pay the sums declared due. If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by paragraph 21 hereof.

Lender may consent to a sale or transfer if: (1) Borrower causes to be submitted to Lender information required by Lender to evaluate the transferee as if a new loan were being made to the transferee; (2) Lender reasonably determines that Lender's security will not be impaired and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable; (3) interest will be payable on the sums secured by this Security Instrument at a rate acceptable to Lender; (4) changes in the terms of the Note and this Security Instrument required by Lender are made, including, for example, periodic adjustment in the interest rate, a different final payment date for the loan, and addition of unpaid interest to principal; and (5) the transferee signs an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument, as modified if required by Lender. To the extent permitted by applicable law, Lender also may charge a reasonable fee as a condition to Lender's consent to any sale or transfer.

Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

18. **Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note had no acceleration occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

19. **Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

20. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, material containing asbestos or formaldehyde, and radioactive materials. As used in the paragraph 20, "Environmental Law" means federal laws and the laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

21. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall mail or cause Trustee to mail a notice of sale to Borrower in the manner prescribed by applicable law. Trustee shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of 8% of the gross sale price and reasonable attorney's fees; (b) to all sums secured by this Security Instrument; and (c) any excess to person or persons legally entitled to it.

22. **Release.** Upon payment of all sums secured by this Security Instrument, Lender or Trustee shall release this Security Instrument without charge to Borrower and mark the Note "paid" and return the Note to Borrower. Borrower shall pay any recordation.

Form #593 MD (10/96)

- 5 -

23. **Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the city or county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

24. **Possession of the Property.** Borrower shall have possession of the Property until Lender has given Borrower notice of default pursuant to paragraph 21 of this Security Instrument.

25. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

☐ Adjustable Rate     ☐ Condominium Rider     ☒ 1-4 Family Rider

☐ Graduated Payment Rider     ☐ Planned Unit Development Rider

☐ Other(s) [specify]

26. **Conformity With Laws.** If any provision of this Mortgage (Deed of Trust) is found to be in violation of any law, rule or regulation which affects the validity and/or enforceability of the Note and/or Mortgage (Deed of Trust), that provision shall be deemed modified to comply with applicable law, rule, or regulation.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (Seal)
Borrower    EDDIE LEWIS, JR.

April J. Gill, Mortgage Processor

_____ (Seal)
Borrower

_____ (Seal)
Borrower

STATE OF MARYLAND, BALTIMORE _____ COUNTY ss:

I Hereby Certify, That on this _6th_ day of _October, 1998_____, before me, the subscriber, a Notary Public of the State of Maryland, personally appeared ____EDDIE LEWIS, JR., A SINGLE MAN_____
_____ known to me or satisfactorily proven to be the person(s) whose name(s) _is_ subscribed to the within instrument and acknowledged that ___he/she___ executed the same for the purposes therein contained.

AS WITNESS: my hand and notarial seal.

My Commission expires: 11-1-99

Kathleen G. Donovan
Notary Public

STATE OF MARYLAND, ___BALTIMORE_____ COUNTY ss:

I Hereby Certify, That on this _6th_ day of ____October, 1998_____, before me, the subscriber, a Notary Public of the State of Maryland, personally appeared____GREGORY J. LAWSON_____
the agent of the party secured by the foregoing Deed of Trust, and made oath in due form of law that the consideration recited in said Deed of Trust is true and bona fide as therein set forth and that the actual sum of money advanced at the closing transaction by the secured party was paid over and disbursed by the party or parties secured to the Borrower or to the person responsible for disbursement of funds in the closing transaction or their respective agent at a time no later than the execution and delivery by the Borrower of this Deed of Trust; and also made oath that he is the agent of the party or parties secured and is duly authorized to make this affidavit.

AS WITNESS: my hand and notarial seal.

My Commission expires: 11-1-99

Kathleen G. Donovan
Notary Public

_____ (Space Below This Line Reserved for Recording Date)_____

Form #593 MD (10/96)