IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

EDDIE LEWIS, JR.

    Plaintiff,

    v.                                 Civil Action No.: 06-CV-232

SELECT PORTFOLIO SERVICES, INC.

    Defendant.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

This action arises out of a complaint that Eddie Lewis, Jr. ("Lewis" or "Plaintiff") filed against Select Portfolio Services, Inc. ("Fairbanks" or "Defendant").[1] The complaint alleges in nine counts that Fairbanks improperly serviced Lewis' loan, unlawfully foreclosed on his property, and fraudulently caused him to rely on its ability to cure the violation of his rights by promising to return possession of his property to him. Defendant contends that it is entitled to dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim because all nine of Plaintiff's counts are barred either by release under a previous class action settlement, by the principle of *res judicata*, or by the Maryland State Statute of Limitations for civil actions. The parties' submissions have been reviewed. No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons that follow, Defendant's Motion to Dismiss for Failure to State a Claim is

---

[1] Select Portfolio Services is the successor in interest to Fairbanks Capital Corp. "Fairbanks" was the name of the company during the period at issue in this case, and it is the name used by both parties in discussing the events surrounding Mr. Lewis' loan. Therefore, this Court will refer to Defendant as Fairbanks.

1

GRANTED as to Counts I-III, VIII and IX of Plaintiff's Complaint and DENIED as to Counts IV-VII of Plaintiff's Complaint.

## BACKGROUND

**A.     The Relationship between Fairbanks and Eddie Lewis**

On or about December 10, 1998 Lewis purchased the real property located at 129 S. Kossuth St. ("Kossuth St.") in the western sector of Baltimore, Maryland.  (Pl.'s Compl. p. 1.)  In order to make the purchase, Lewis took out a $39,000 loan with Encore Mortgage, Inc., which he secured by a Deed of Trust to the South Kossuth St. property.  (Pl.'s Compl. p. 2; Def.'s Mem. Supp. Mot. Dis. p. 1.).

At some time between 1998 and 2002, Encore Mortgage transferred its interest in the loan to Fairbanks.  (Pl.'s Compl. p. 2.)  Fairbanks is a Salt Lake City, Utah company that specializes in servicing the mortgages of individuals with sub-par credit.  (Pl.'s Compl. p. 1.)  Although Lewis' payments were current under the loan agreement, Fairbanks treated his account as if it were in default.  (*Id.* at  p. 2.)  Lewis paid the arrearages assessed in order to keep his account current.  (*Id*. at p. 2.)  Despite his payments, on June 18, 2002 Plaintiff received a letter from the law firm of Draper and Goldberg informing him that Fairbanks had instructed it to accelerate his debt and foreclose on his property.  (*Id*. at p. 2.)  On June 26, 2002 Draper and Goldberg informed Plaintiff that the foreclosure would take place on July 19, 2002.  (*Id*. at p. 2.)  Lewis maintains that Fairbanks repeatedly reassured him that his account was current and that it would correct its mistakes.  (Pl.'s Compl. p. 8.)  On July 19, 2002 the Substitute Trustees sold Kossuth St. for $19,892.00.  The auditor's report of the sale, conducted to evaluate the sale's validity, was confirmed on December 11, 2002.  (*Id.* at p. 3.)

On December 27, 2002, Kossuth St. was formally conveyed to the US Bank National Association ("US Bank"), the purchaser at auction. (*Id.*) On January 17, 2003, US Bank filed a Motion for Possession of Property with the Circuit Court for Baltimore City, which the court granted on March 20, 2003. (*Id.* at p. 4.) US Bank filed a Request for Writ of Possession asking the Sheriff to secure possession of the property on April 4, 2003. (*Id.* at p. 4.) According to the allegations set forth in Lewis' Complaint, Fairbanks was continuously promising throughout this period that it would reverse the foreclosure and restore possession to Lewis. (Pl.'s Compl. at p. 8-14.) Draper and Goldberg, on behalf of Fairbanks, attempted to set aside the foreclosure on August, 18, 2003. (Pl.'s Opp. Mot. Dis. Ex. 2. p. 1.)[2] The Circuit Court for Baltimore City denied the Motion on October 16, 2003. (Pl.'s Opp. Mot. Dis. Ex. 2. p. 23.) Lewis was not informed of this ruling, and "[Fairbanks], for reasons only known to itself, took no further action to correct the wrongful foreclosure and failed to advise the Plaintiff that Defendant would cease any further efforts to reverse the foreclosure." (Mem. Supp. Pl.'s Opp. Mot. Dis. p. 3.)

**B.      The *Curry* Class Action**

In 2003 a number of existing actions against Fairbanks were consolidated into *Curry v. Fairbanks Capital Corp.* ("the Class Action" or "*Curry*"), which was filed in the United States District Court for the District of Massachusetts. (Def.'s Mem. Supp. Mot. Dis. Ex. A p. 1

---

[2] The letters and court documents submitted with Plaintiff's Opposition and Defendant's Motion to Dismiss are documents "upon which Plaintiff relies in bringing the action" and may be considered by this Court in deciding Defendant's Motion to Dismiss without converting the Rule 12(b)(6) motion to one for summary judgment. *Biospherics v. Forbes*, 989 F. Supp. 748, 749 (D. Md. 1997) (considering as part of the defendant's motion to dismiss an article attached to the defendant's motion that was the subject of a suit) (citing *Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 46-48 (2d Cir. 1991)). As a result, Defendant's Motion to Dismiss will not be converted to one for summary judgment. *See id.* at 750.

("Class Action Complaint").)  The Plaintiffs in the Class Action generally alleged improper servicing of mortgage loans, up to and including foreclosure on the underlying security.  (Def.'s Mem. Supp. Mot. Dis. p. 4.)  On November 14, 2003, the parties entered into a Settlement Agreement and Release.  (Def.'s Mem. Supp. Mot. Dis. p. 4.)  Less than a month later, on December 10, 2003, the Honorable Douglas P. Woodlock preliminarily certified the class for settlement purposes.  (Def.'s Mem. Supp. Mot. Dis. p. 5.)

Fairbanks was directed to provide the Federal Trade Commission ("the FTC") with a class member list within twenty days of Judge Woodlock's Order.  (Def.'s Mem. Supp. Mot. Dis. p. 6.)  The FTC was, in turn, required to mail personal notice to each person identified on the class member list.  (Def.'s Mem. Supp. Mot. Dis. Ex. D p. 7. )  Fairbanks identified Eddie Lewis as a class member in this action.  (Def.'s Mem. Supp. Mot. Dis. p. 7.)  Lewis was apparently mailed notification of the Class Action on February 23, 2004.  (Def.'s Mem. Supp. Mot. Dis. p. 8.)[3]  Each class member who did not wish to be bound by the Class Action Settlement was required to "opt-out" by returning a request form included in the notice mailing.  (Def.'s Mem. Supp. Mot. Dis. Ex. D. p. 8)  Eddie Lewis neither submitted a claim form nor opted out of the *Curry* settlement class.  (*See* Def.'s Mem. Supp. Mot. Dis. Ex. G.)

Notice was also posted twice in the national edition of USA Today.  (Def.'s Mem. Supp. Mot. Dis. p. 6.)  On May 12, 2004 Judge Woodlock issued a final order certifying the class and approving the Settlement Agreement.  (*See* Def.'s Mem. Supp. Mot. Dis. Ex. C ("Class Action

---

[3]   Tricia Solórzano, a representative of Gilardi & Co., the Settlement Administrator appointed by the *Curry* court and the designee of the FTC for distribution of notice, attested that personal notice was mailed to Lewis on February 23, 2004.  She also attests that the claim form included within was never returned for processing, nor was the mailing returned by the U.S. Postal Service as undeliverable. (*See* Def.'s Mem. Supp. Mot. Dis. Ex. G)

4

Final Order").)

**C.      Procedural History**

On December 7, 2005 Plaintiff filed the instant action against Defendant in the Circuit Court for Baltimore City, Maryland.  (*See* Paper No. 1.)  On January 26, 2006 Defendant filed Notice of Removal to this Court pursuant to 28 U.S.C. §1332.  (*See* Paper No. 1.)  On January 27, 2006, this Court approved Removal.  (*See* Paper No. 6.)  The Complaint alleges in nine counts Trespass, Breach of Contract, Unjust Enrichment, Negligent and Intentional Misrepresentation, Constructive Fraud, Breach of Fiduciary Duty, and Violation of the Maryland Declaration of Rights.  (*See* Pl.'s Compl.)

STANDARD OF REVIEW

Defendant seeks to dismiss Plaintiff's action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  As the legal sufficiency of the complaint is challenged under a Rule 12(b)(6) motion, the court assumes "the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *Eastern Shore Mkts. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).  A Rule 12(b)(6) motion to dismiss "should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.,* 248 F.3d 321, 325 (4th Cir. 2001); *see also Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005).  Furthermore, the "Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  Rather, Rule 8(a)(2) of

the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal*, 248 F.3d at 325-26; *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

In reviewing the complaint, the court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Venkatraman*, 417 F.3d at 420*; Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997); *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). The court must disregard the contrary allegations of the opposing party. *A.S. Abell Co. v. Chell*, 412 F.2d 712, 715 (4th Cir. 1969). However, in considering a motion to dismiss, the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments" nor "the legal conclusions drawn from the facts." *Eastern Shore Mkts., Inc.,* 213 F.3d at 180; *see also Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 329 F. Supp. 2d 574, 578 (D. Md. 2004).

DISCUSSION

Defendant's principle argument for dismissal is that the claims asserted in this action were released by Plaintiff in the *Curry* Class Action Settlement. *See, e.g., Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 104 (2nd Cir. 2005) (where a class action release is approved by the court, existing and subsequent actions on those grounds by the plaintiffs are barred). In order to be certified, a class must meet the familiar requirements of Fed. R. Civ. P. 23(a), namely "numerosity of parties, commonality of factual or legal issues, typicality of claims and defenses of class representatives, and adequacy of representation." *Thorn v. Jefferson-Pilot Life Ins.*, 445 F.3d 311, 319 (4th Cir. 2005). The *Curry* court addressed this issue, as well as the required

analysis of certification under Rule 23(b)(1)-(3), in its Final Order Certifying Settlement Class and Approving Settlement. (*See* Def.'s Mem. Supp. Mot. Dis. Ex. C.) While the propriety of certification is undisputed, given the speed with which the case was settled it appears unlikely that extensive discovery could have been conducted.[4] Where discovery is incomplete, as the Third Circuit has noted, "[courts] have commented extensively on the collusive dangers inherent in a settlement-only class action." *In re Community Bank of Northern Virginia*, 418 F.3d 277, 308 (3rd Cir. 2005). Such danger can exist in consolidated national class actions because:

> the settlement agreement is the product of a "reverse auction," the practice whereby the defendant in a series of class actions picks the most ineffectual class lawyers to negotiate a settlement within the hope that the district court will approve a weak settlement that will preclude other claims against the defendant. *Id.* at 308 (citing *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 282-83 (7th Cir. 2002))

In examining the Class Action Settlement's possible effect on Plaintiff's claims, this Court acknowledges the potential dangers to the absentee plaintiff inherent to settlement-only class certification.

Such dangers are particularly sensitive with respect to the provision of notice to absentee class members. In this case, Lewis contends that, whether or not notice was mailed to him, he did not receive it. (Lewis' Aff. p. 2.) Due process requires notice to be reasonably calculated to inform interested parties of the pendency of the action and afford them an opportunity to present their objections. *See Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306 (1950). "This notice requirement does not, however, require that members of a class personally receive notice."

---

[4] The Class Action was filed in November 2003 and settled by November 14, 2003.

*SR 7 Leasing, Inc. v. Curtis*, 189 F.R.D. 681, 683 (M.D. Ala. 1999).  Due process requires that "[t]he means employed [to give notice] . . . be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Mullane*, 339 U.S. at 315.

If the *Curry* Lead Counsel or Defendant had been responsible for providing class members with notice, Lewis' contention that he has "no recollection of receiving such a document" might have been adequate to challenge the sufficiency of notice claimed by the parties.  However, considering the involvement of the Federal Trade Commission, and the actual mailing of notice by an independent FTC designee, the provision of notice in this case is not subject to the sort of collusive dangers inherent to the involvement of parties in notice giving.  Indeed, the United States District Court for the Northern District of Illinois has specifically examined the adequacy of notice in the *Curry* Class Action.  In *Medina v. Mfr.'s & Traders Trust Co.*, 2004 U.S. Dist. LEXIS 25305 (D. Ill. 2004) the Northern District of Illinois determined that the *Curry* settlement administrator's provision of notice was sufficient.  In *Medina*, at summary judgment, attempted to raise a factual dispute by claiming that a Fairbanks-related party intentionally provided an outdated address to the settlement administrator for the purpose of providing notice.  The *Medina* court stated:  "Although it is possible that Manufacturers and Fairbanks provided an address for the Medinas that was out-dated, I find that the size of the plaintiff class in the Curry action, Fairbank's provision of the Medinas' name to the settlement administrator, and its reliance on the National Change of Address database to update class members' addresses *constituted the best practicable efforts to provide notice under the circumstances*."  *See id.* at *11-12 (emphasis added).  Therefore, in this case, Plaintiff's contention that he cannot recall receiving the notice mailing is insufficient on its own to overcome the legally sufficient notice agreed upon by the

parties, approved by a federal judge, and implemented by the FTC and its impartial designee.

The pertinent part of the Class Action Settlement Release reads that a class member who has not excluded himself released:

> Any and all claims, demands, rights. . ., and causes of every nature and description whatsoever for any losses, harms, injuries, . . . ., consequential, or incidental damages, punitive damages, . . . that result, concern or arise from, or in connection with (a) the transactions or occurrences or series of transactions or occurrences alleged in the Consolidated Class Action Complaint; (b) the acts or omissions of Fairbanks or of any Fairbanks-related Party in connection with Fairbanks' [sic] servicing of the Serviced Loans related to the transactions or occurrences or series of transactions or occurrences alleged in the Consolidated Class Complaint; (c) Fairbanks' servicing of a Service Loan that ever was in default or treated by Fairbanks as being in default. (Def.'s Mem. Supp. Mot. Dis. p. 6.)

The *Curry* Complaint itself included various allegations of breach of contract, breach of fiduciary duty, misrepresentation *as to the assessment of improper fees*, improperly treating loans in default, and improper institution of foreclosure proceedings. (*See generally* Class Action Complaint.)

Interpretation of the *Curry* Settlement Agreement is subject to the substantive contract law of Massachusetts.[5]  A contract interpreted under Massachusetts law "must be construed in accordance with common sense [and] the likely intent of the parties." *Fleet Nat'l Bank v. H&D Entertainment*, 96 F.3d 532, 538 (1st Cir. 1996).  Indeed the *Curry* Settlement Agreement released those claims which were specifically alleged in the Class Action Complaint or directly

---

[5] This Court, in a diversity action such as this one, must apply the choice of law rules of the State of Maryland.  *Riesett v. W.B. Doner & Co.*, 293 F.3d 164, 173 n.5 (4th Cir. 2002).  Where the law of a specific state is chosen in the contract, Maryland applies the substantive contract law of that state.  *Id.*

described in the release itself.  The plain terms of the Class Action Release included in the settlement agreement preclude Plaintiff's counts I-III, VIII and IX.

Count I alleges trespass and Count III alleges unjust enrichment.  Count I is based upon the buyer at foreclosure taking possession of 129 Kossuth St. and Count II is based upon Fairbanks keeping the proceeds of the foreclosure sale.[6]  Both claims are based on actions taken as part of a foreclosure proceeding by the foreclosing mortgage lender.  The Class Action Complaint and Settlement Agreement encompass claims of improper foreclosure and the attendant damages. These claims are expressly released by enumeration in the Class Action Complaint and Settlement Agreement.  (Class Action Complaint p. 19, counts 85-87.)  Therefore, Counts I and III are precluded by the *Curry* Settlement Agreement.

Count II, alleging Breach of Contract, is based upon Defendant's failure to "properly supervise and manage the mortgage loan accounts which were owned or serviced by Defendant" and related claims of improper servicing.  (Pl.'s Compl. p. 5-7.)  Mirroring Count II, Count IX alleges improper servicing of Lewis' loan under sections 24 and 26 of the Maryland Declaration of Rights.  (Pl.'s Compl. p. 15-16.)  Failure to credit payments, assessment of improper late fees, and improper treatment in default are alleged specifically and generally in the Class Action Complaint, as is a claim for Breach of Contract based upon those factual allegations.  The Class Action Complaint also covers "Unfair and Deceptive Acts and Practices in Violation of State

---

[6] Defendant argues that Plaintiff's claims of improper foreclosure are designed to negate the Circuit Court for Baltimore City's denial of Defendant's Motion to Set Aside Foreclosure.  (Def.'s Mem. Supp. Mot. Dis. p. 8-10.)  It contends that such claims are therefore barred by principles of collateral attack and *res judicata.*  This Court need not decide the merits of these defenses because Plaintiff's claims, based on an allegation of improper foreclosure, are already precluded by the Class Action Settlement Agreement.

Laws" alleging similar improper servicing of loans, which are representative of the claims asserted by Plaintiff in Count IX.[7] (Class Action Complaint ¶¶ 105-163.) Therefore, Counts II and IX are precluded by the Class Action Settlement Agreement.[8]

Count VIII alleges breach of fiduciary duties, and is based upon improper servicing of Plaintiff's loan and improper default and foreclosure. A claim of breach of fiduciary duties based on the same factual allegations is included in the Class Action Complaint. (*See generally* Class Action Complaint p. 18-20, 27.) Count VIII is therefore precluded, as it is covered by the Class Action Settlement.

In order to find Counts IV-VII precluded however, this Court would be required to rely on the more ambiguous language of the release covering non-enumerated claims. A contract is ambiguous under Massachusetts law "when its language is 'reasonably prone to different

---

[7] As previously noted, in Count IX Plaintiff asserts a cause of action under sections 24 and 26 of the Maryland Declaration of Rights. The Maryland Court of Appeals has made clear that "unlike common law torts, which are designed generally to protect private persons from each other, [Maryland] Constitutional provisions have the more narrow focus of protecting citizens from certain unlawful acts committed by government officials. Indeed, *only* government agents can commit these kinds of Constitutional transgressions." *DiPino v. Davis*, 729 A.2d 354, 371 (Md. 1999) (emphasis added). As a result, even if Count IX was not released by the *Curry* Settlement Agreement, this claim is not cognizable in this case, where Defendant is not a government agent.

[8] Defendant also alleges that Plaintiff's claims I-III and IX are barred because they were not timely. In a diversity action the substantive law of the forum state controls. *See Limbach Co., LLC v. Zurich Am. Ins. Co.*, 396 F.3d 358, 361 (4th Cir. 2005). The relevant Maryland law states that a civil action must be filed within three years of accrual. *See* MD CODE ANN CTS & JUD. PROC. §5-101. A Cause of Action accrues when all elements have occurred and the Plaintiff knows or reasonably should know that the Cause of Action exists. *See Millison v. Wilzack*, 77 Md. App. 676, 685 (1989). In this case, only claims predating December 7, 2002 could be barred by the Statute of Limitations. While all of the above claims involve activity before December 7, this Court must not determine whether accrual began in 2002 or 2003 because claims I-III and IX are already precluded by the Class Action Settlement Agreement.

11

interpretations' or 'susceptible to differing, but nonetheless plausible, constructions.'" *Lanier Professional Servs v. Ricci*, 192 F.3d 1, 4 (1st Cir. 1999) (citing *Alison H. v. Byard*, 163 F.3d 2, 6 (1st Cir. 1998)).  While the Class Action Complaint includes a claim of Intentional Misrepresentation, that claim alleges only that Fairbanks misled clients with regard to assessment of additional fees.  There is no Fraud claim included in the Class Action Complaint, and no Misrepresentation claim related to a client's attempt to regain his property after the completion of foreclosure.

Plaintiff alleges in counts IV-VII that Defendant essentially prevented Plaintiff from pursuing other avenues through which to regain possession of his property, because Plaintiff reasonably relied on Defendant's assurances that default and foreclosure had been improper and would be reversed.  (*See generally* Compl. p. 8-14.)  Such facts are included nowhere in the Class Action Complaint, and thus would, of necessity, be based on the release of all claims that "result, concern or arise from, or in connection with [] the transactions or occurrences or series of transactions or occurrences" alleged in the Class Action Complaint. (Def.'s Mem. Supp. Mot. Dis. p. 6.)  The definition of "series of transactions or occurrences" "arising from" the Complaint's allegations could have an infinite variety of constructions.  At this early stage of litigation, prior to discovery, and considering the intent of the parties, the language in the *Curry* Settlement Agreement is susceptible to "differing, but nonetheless plausible constructions."  This court is required to assume "the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *Eastern Shore Mkts. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  Because such facts may be extant, this Court is unable to conclude as a

matter of law, at this early stage in the litigation, that the Causes of Action in claims IV-VII are precluded by the Class Action release.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss for Failure to State a Claim is GRANTED as to Counts I-III, VIII and IX and DENIED as to Counts IV-VII.  A separate Order follows.


Dated: July 10, 2006                                         /s/                                                         
                                                                   Richard D. Bennett
                                                                   United States District Judge